**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **GIVONNA L. WILEY**,<br>c/o Dann Law<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>        Plaintiff,<br><br>        v.<br><br>**SELENE FINANCE, LP**,<br>c/o Corporation Service Company<br>1160 Dublin Road, Suite 400<br>Columbus, OH 43215<br><br>        Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Givonna L. Wiley ("Wiley" or "Plaintiff"), through counsel, for her *Complaint for Damages* against Defendant Selene Finance, LP ("Selene" or "Defendant"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Wiley is the owner of residential real property, located at and commonly known as 10250 Janet Drive, Streetsboro, Ohio 44241 (the "Home").

2. Wiley currently maintains the Home as her primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

3. On or about May 19, 2006, Wiley executed a promissory note (the "Note") in favor of the Investaid Corporation and secured by a mortgage (the "Mortgage") (collectively, the "Loan").

4. Selene is a foreign limited partnership organized under the laws of the state of Delaware with its principal place of business located in the state of Texas.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq.*

6. This Court has supplemental jurisdiction to hear any state law claims that are pleaded herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

8. This action is filed to enforce statutory provisions of RESPA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.1, *et seq.* ("Regulation X").

9. Wiley asserts claims for relief against Selene for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

10. Selene is a "mortgage servicer" as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

11. The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

12. The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

13. Selene is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

14. The Loan is secured by the Home which is Wiley's principal residence. 12 C.F.R. § 1024.30(c)(2).

15. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

16. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

17. Wiley has a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

18. Wiley also asserts state law statutory claims against Selene for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

19. Wiley is a "buyer" because she is an individual whose mortgage loan is serviced by a mortgage servicer, Selene. R.C. 1322.01(I),

20. The Loan is a residential mortgage loan as defined by the RMLA, secured by the Home, which is Wiley's principal residence. R.C. 1322.01(II).

21. Selene is a "mortgage servicer" under the RMLA as it holds "the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

22. Selene, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322. R.C. 1322.07(A).

23.     Selene is a "registrant" under the RMLA, as the Ohio Department of Commerce, Division of Financial Institutions has issued Selene registration certificates, License No. RM. 501430.000. R.C. 1322.01(HH).

24.     Selene is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

25.     The RMLA provides Wiley with a private right of action for violations thereof, including actual damages, reasonable attorneys' fees and costs, and punitive damages. R.C. 1322.45 and 1322.52.

## FACTUAL ALLEGATIONS

### *Force-Placed Insurance Issues Leading to a Foreclosure Filing*

26.     The Loan was modified effective February 1, 2020, while serviced by Select Portfolio Servicing, Inc. ("SPS"), with a new interest-bearing principal balance of $232,594.00 with a step-rate structure interest rate.

27.     Servicing of the Loan was transferred from SPS to Selene on or about December 1, 2021.

28.     On or about May 25, 2023, Selene conducted an escrow analysis that projected a payment of $4,782.00 for force-placed homeowner's insurance. As a result, Wiley's monthly payment increased from $1,671.38 to $2,381.46, effective July 1, 2023. A copy of the Annual Escrow Account Disclosure Statement is attached as **Exhibit 1**.

29.     As Wiley could not afford this significant increase, on or about May 24, 2023, she purchased a less expensive Progressive homeowner's insurance policy with a premium of $2,873.00, effective June 1, 2023 (the "Progressive Policy").

30.     On or about May 30, 2023, Wiley first contacted Selene by telephone to notify Selene that she had purchased the Progressive Policy.

31.     On June 1 and 7, 2023, Wiley made at least three additional telephone calls to Selene concerning the Progressive Policy.

32.     Wiley also uploaded proof of insurance to Selene's website on June 1 and 7, 2023.

33.     On June 14, 2023, Wiley emailed proof of insurance to iamcovered@selenefinance.com, but received an email delivery failure notice.

34.     Wiley did not make the payment of $2,381.46 due July 1, 2023 or subsequent monthly payments due to issues caused by the excessive force-placed insurance policy.

35.     On July 18, 2023, Wiley emailed proof of insurance to selene@imcovered.com. A copy of this email is attached as **Exhibit 2**.

36.     Wiley received an automatic reply in response advising that it would take up to five (5) business days for processing.

37.     Wiley did not hear from Selene or its vendor within the five (5) business day window, or by July 25, 2023.

38.     On July 25 and 28, 2023, Wiley called Selene to follow up with the processing of the insurance information for the Progressive Policy.

39.     On July 28, 2023, Wiley forwarded the July 18, 2023 insurance email to customerservice@selenefinance.com and received an acknowledgment of receipt the same day. A copy of this email is attached as **Exhibit 3**.

40. On August 2, 2023, Wiley again called Selene to follow up with the processing of the insurance information for the Progressive Policy and submitted proof of insurance again by email. A copy of this email is attached as **Exhibit 4**.

41. On August 2, 2023, or eleven (11) business days after July 18, 2023, Selene's vendor confirmed receipt of Wiley's insurance information.

42. On August 4, 2023, Selene's vendor confirmed successful verification of the Progressive Policy, stating, "There is no additional action required from you at this time."

43. Between August 5 and 30, 2023, Wiley followed up with Selene by telephone on multiple occasions and was told to continue to wait for processing and that Selene would provide her with an updated escrow disclosure statement.

44. On August 18, 2023, Wiley once again submitted proof of insurance by email. A copy of this email is attached as **Exhibit 5**.

45. Despite these multiple confirmations, on August 31, 2023, when Wiley again called Selene, Selene's representative now advised that it had not received proof of insurance.

46. On September 1, 2023, Selene sent Wiley an Annual Escrow Account Disclosure Statement informing her that her monthly payment obligation would be adjusted to $2,152.40, with an escrow portion of $1,133.59, beginning November 1, 2023. A copy of the Annual Escrow Account Disclosure Statement is attached as **Exhibit 6**.

47. Selene assessed the Loan approximately $318.10 each month for force-placed insurance premiums from May 2023 through at least November 2023.

48. Selene failed to confirm the Progressive Policy until November 15, 2023, when Selene notified Wiley that it claimed to have canceled the force-placed insurance effective June

1, 2023, and claimed to have credited $1,908.60 to the Loan. A copy of this correspondence is attached as **Exhibit 7**.

49.    However, even after this purported cancellation, Selene refused to modify Wiley's monthly escrow obligation and continued to demand amounts for the force-placed insurance policy.

50.    By November 15, 2023, Wiley was five (5) months behind on her mortgage payments due because of Selene's unnecessary delay in processing her insurance information.

51.    On November 28, 2023, the owner of the Loan filed a foreclosure complaint against Wiley in the Portage County Court of Common Pleas, Case No. 2023CV00942 (the "Foreclosure Case").

52.    On or about August 21, 2024, nine (9) months after Selene claimed to have cancelled the force-placed insurance policy, Selene sent Wiley an Annual Escrow Account Disclosure Statement that finally reduced the monthly escrow obligation from $1,139.59 to $693.98, resulting in Wiley's monthly payment dropping from $2,293.69 to $1,854.08 effective October 1, 2024. A copy of the Annual Escrow Account Disclosure Statement is attached as **Exhibit 8**.

53.    This escrow analysis resulted in an overage of $1,135.06, which Selene kept because the Loan's owner had filed the Foreclosure Case.

***Wiley's Loss Mitigation Applications and her Attempts to Correct Selene's Servicing Errors***

54.    In August 2023, Wiley engaged counsel for representation to request loss mitigation assistance, request information relating to the Loan, and to investigate Selene's servicing of the Loan.

55. On November 3, 2023, Wiley submitted a loss mitigation application to Selene by facsimile ("Application #1"). A copy of the cover sheet for Application #1 is attached as **Exhibit 9**.

56. On November 10, 2023, Selene sent correspondence to Wiley requesting additional documents to complete Application #1 by December 9, 2023, specifically, "Borrower – Business Bank Statements Jan 1 to oct 13 bank stmt matching P and L stmt" ("Incomplete Notice #1"). A copy of this correspondence is attached as **Exhibit 10**.

57. On November 30, 2023, Wiley submitted the following documents in response to Incomplete Notice #1 to Selene by facsimile:

    a. Bank statements for July 11 to October 31, 2023; and

    b. A letter of explanation informing Selene that she opened her business bank account on July 10, 2023.

A copy of the cover sheet for this submission is attached as **Exhibit 11**.

58. On December 19, 2023, Selene improperly closed out review of Application #1, falsely stating that the "Borrower failed to return the completed financial workout package and supporting documentation." A copy of this correspondence is attached as **Exhibit 12**.

59. For all times relevant, Selene has designated the following address for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c)

(the "Designated Address"):

> Selene Finance LP
> ATTN: Customer Correspondence
> PO Box 8279
> Philadelphia, PA 19101-8279

60.     On or about September 27, 2023, Wiley, through counsel, sent the following pieces of correspondence, all classified as requests for information pursuant to 12 C.F.R. § 1024.36, to Selene at the Designated Address:

    a.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking information concerning the Loan, specifically an itemized payoff statement and the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan ("RFI #1"); and

    b.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items ("RFI #2").

Copies of RFI #1 and RFI #2 are attached as **Exhibit 13** and **Exhibit 14**, respectively.

61.     On or about January 4, 2024, Wiley, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #1") to Selene at the Designated Address. A copy of NOE #1, without enclosures, and tracking information evidencing delivery of NOE #1 is attached as **Exhibit 15**.

62.     Through NOE #1, Wiley asserted that Selene committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for issuing inaccurate information related to Selene's review of Application #1, specifically the false statement that "Borrower failed to return the completed financial workout package and supporting documentation." *See* Exhibit 15.

63. Selene received NOE #1 at the Designated Address on January 18, 2024. *See* Exhibit 15.

64. Neither Wiley nor her counsel received a timely written response from Selene to NOE #1.

65. On January 22, 2024, Wiley submitted a loss mitigation application to Selene by facsimile ("Application #2"). A copy of the cover sheet for Application #2 is attached as **Exhibit 16**.

66. On January 26, 2024, Selene sent correspondence to Wiley requesting additional documents to complete Application #2 by February 24, 2024, specifically, "Borrower – Business Bank Statements Received however need from Jan 1st to Jul 10th" ("Incomplete Notice #2"). A copy of this correspondence is attached as **Exhibit 17**.

67. On February 2, 2024, Wiley again submitted the explanation letter informing Selene that she opened her business bank account on July 10, 2023. A copy of the cover sheet for this submission is attached as **Exhibit 18**.

68. On March 6, 2024, Selene improperly closed out review of Application #2, falsely stating that the "Borrower failed to return the completed financial workout package and supporting documentation." A copy of this correspondence is attached as **Exhibit 19**.

69. On or about March 7, 2024, Wiley, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #2") to Selene at the Designated Address. A copy of NOE #2, without enclosures, and tracking information evidencing delivery of NOE #2 is attached as **Exhibit 20**.

70. Through NOE #2, Wiley asserted that Selene committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for issuing inaccurate information related to Selene's

review of Application #2, specifically the false statement that "Borrower failed to return the completed financial workout package and supporting documentation." *See* Exhibit 20.

71. Selene received NOE #2 at the Designated Address on March 19, 2024. *See* Exhibit 20.

72. On or about March 22, 2024, Selene sent Wiley a response NOE #1 and NOE #2 ("Selene Response #1"). A copy of Selene Response #1 is attached as **Exhibit 21**.

73. In Selene Response #1, Selene states:

> Please note, although Ms. Wiley provided a letter explaining that she did not establish a Business Bank Account until July 10, 2023, self-employment income reflecting on a Profit and Loss Statement must be validated by Bank Statements.
>
> Since Ms. Wiley did not have a Business Bank Account from January 1, 2023 to July 9, 2023, she would have needed to provide her Bank Statements from her personal bank account along with her letter of explanation.

*See* Exhibit 21.

74. This was the first time Selene communicated that there was an issue with Wiley's explanation letter and the first time Selene requested Wiley's personal bank statements.

75. On March 15, 2024, Wiley submitted a loss mitigation application to Selene by facsimile ("Application #3").

76. On or about March 20, 2024, Selene confirmed receipt of Application #3 and deemed it to be a complete application.

77. On or about March 20, 2024, Wiley, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 and a request for information pursuant to 12 C.F.R. § 1024.36 ("NOE #3/RFI #3") to Selene at the Designated Address. A copy of NOE #3/RFI #3, without

enclosures, and tracking information evidencing delivery of NOE #3/RFI #3 is attached as **Exhibit 22**.

78.     Through NOE #3, Wiley asserted that Selene committed a covered error pursuant to 12 C.F.R. §§ 1024.35(b)(5) and (11) for improperly assessing fees to the Loan for force-placed insurance after confirming that Wiley purchased homeowner's insurance. *See* Exhibit 22.

79.     Through RFI #3, Wiley sought information concerning the Loan, specifically copies of any force-placed insurance policies relating to the Loan. *See* Exhibit 22.

80.     Selene received NOE #3/RFI #3 at the Designated Address on March 26, 2024. *See* Exhibit 22.

81.     On or about March 25, 2024, Wiley, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #4") to Selene at the Designated Address. A copy of NOE #4, without enclosures, and tracking information evidencing delivery of NOE #4 is attached as **Exhibit 23**.

82.     Through NOE #4, Wiley asserted that Selene committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to exercise reasonable diligence in obtaining documents to complete her loss mitigation applications. *See* Exhibit 23.

83.     Selene received NOE #4 at the Designated Address on March 30, 2024. *See* Exhibit 23.

84.     On or about April 10, 2024, Selene sent correspondence to Wiley approving her for a permanent loan modification ("Modification #1"), but Wiley did not accept Modification #1 at this time.

85. On or about May 29, 2024, Selene sent Wiley a response NOE #3/RFI #3 and NOE #4 ("Selene Response #2"). A copy of Selene Response #2 is attached as **Exhibit 24**.

86. Selene Response #2 acknowledges that Selene claimed to have canceled the force-placed insurance but falsely claims that "the monthly insurance premium was adjusted down from $318.10 to $239.42." *See* Exhibit 24.

87. As discussed, *supra*, Selene did not correct the errors raised in NOE #3 until it performed an escrow analysis on or about August 21, 2024. *See* Exhibit 24.

88. Selene Response #2 does not respond to the errors raised in NOE #4 or provide the information sought by RFI #3. *See* Exhibit 24.

89. As of August 2024, the Loan was in arrears of approximately $40,000.00 and subject to the ongoing Foreclosure Case.

90. On October 3, 2024, Wiley submitted a loss mitigation application to Selene by facsimile ("Application #4").

91. On or about February 3, 2025, Selene sent correspondence to Wiley approving her for a permanent loan modification ("Modification #2").

92. On February 11, 2025, Wiley communicated her acceptance of Modification #2 to Selene in order to mitigate her damages.

93. On or about March 25, 2025, Selene implemented the Modification #2 and her monthly mortgage payment is now $3,158.63, a $1,487.25 increase from three years ago.

94. On March 28, 2025, the owner of the Loan moved to dismiss the Foreclosure Case and on April 1, 2025, the state court granted a dismissal without prejudice.

## IMPACT AND DAMAGES

95.     Selene's improper actions caused Wiley to suffer from actual and proximate damages including:

    a.  Improper fees and charges imposed on the Loan, the collection of such fees, including any late fees and other default servicing related fees for which Wiley is personally obligated or which otherwise negatively impacts any equity in the Home to which she is entitled;

    b.  Harm to Wiley's credit and a delay in the rehabilitation of her credit which would have been avoided had Selene timely and properly confirmed the Progressive Policy or acted appropriately in relation to the loss mitigation and error resolution processes for the Loan;

    c.  Loss of time and money dealing with insurance issues and requests for loss mitigation documentation, which would not have been necessary but for Selene's wrongful conduct;

    d.  Legal fees, costs, and expenses incurred to take reasonable steps to defend the improper Foreclosure Case;

    e.  Legal fees, costs, and expenses incurred to seek loss mitigation assistance;

    f.  Legal fees, costs, and expenses to submit each notice of error and request for information, described, *supra*, in a good faith attempt to amicably resolve this matter or to have Selene mitigate the harm caused to Wiley to which she did not receive proper or adequate responses; and,

    g.  Severe emotional distress driven by Selene's wrongful conduct related to failing to timely and properly confirm the status of the Progressive Policy,

failing to timely adjust Wiley's monthly escrow obligation, assessing improper fees to the Loan, filing and maintaining the improper Foreclosure Case, failing to exercise reasonable diligence to complete Wiley's loss mitigation applications, failing to properly and timely respond to Wiley's request for information and notices of error, and by justified fear that the ensuing delinquency would result in an eventual foreclosure sale of the Home, which resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

### PATTERN AND PRACTICE OF SELENE'S VIOLATIONS OF RESPA AND REGULATION X

96.     Selene's actions are part of a pattern and practice of behavior in violation of Wiley's rights and in abdication and contravention of Selene's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

97.     Selene has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

98.     Wiley has reviewed the CFPB's consumer complaint database and has identified narratives asserting that Selene engaged in similar conduct against other borrowers. In particular, Wiley has reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 25**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Selene has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

### COUNT ONE: VIOLATIONS OF RESPA AND REGULATION X

**(12 C.F.R. § 1024.37(g) and 12 U.S.C. §§ 2605(k), (l), and (m))**

**(Failure to Timely Terminate a Force-Placed Insurance Policy and Refund Related Fees Charged to a Mortgage Loan after Terminating a Force-Placed Insurance Policy)**

99. Wiley restates and incorporates all of the allegations contained in paragraphs 1 through 98 in their entirety, as if fully rewritten herein.

100. 12 U.S.C. § 2605(k)(2) defines "force-placed insurance" as hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage." *See also* 12 C.F.R. § 1024.37(a)(1).

101. "All charges ... related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable." 12 U.S.C. § 2605(m); *see also* 12 C.F.R. § 1024.37(b).

102. Comment 2 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(b)(5), entitled "Unreasonable basis", declares that "a servicer lacks a reasonable basis to impose fees that are not bona fide, such as ... (iv.) A charge for force-placed insurance in a circumstance not permitted by § 1024.37."

103. 12 U.S.C. § 2605(l)(3)(A) requires a servicer to terminate a force-placed insurance policy within fifteen (15) days of the receipt of a servicer's confirmation of a borrower's existing insurance coverage. *See also* 12 C.F.R. § 1024.37(g)(1).

104. 12 U.S.C. § 2605(l)(3)(B) requires a servicer to "refund to the consumer all force-placed insurance premiums paid by the borrower during any period during which the borrower's insurance coverage and the force-placed insurance coverage were each in effect, and any related fees charged to the consumer's account with respect to the force-placed insurance during such period." *See also* 12 C.F.R. § 1024.37(g)(2).

105.    12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not ... fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

106.    On or about May 23, 2023, Selene conducted an escrow analysis that projected a payment of at $4,782.00 for force-placed homeowner's insurance. *See* Exhibit 1.

107.    On or about May 24, 2023, Wiley purchased the less expensive Progressive Policy.

108.    During the months of May through August 2023, Wiley contacted Selene multiple times to notify Selene that she had purchased the Progressive Policy and provided Selene with proof of insurance on multiple occasions.

109.    Selene assessed the Loan approximately $318.10 each month for force-placed insurance premiums from May 2023 through at least November 2023.

110.    Selene failed to confirm the Progressive Policy until November 15, 2023. *See* Exhibit 7.

111.    By November 15, 2023, Wiley was five (5) months behind on her mortgage payments due because of Selene's unnecessary delay in processing her insurance information and the owner of the Loan filed the Foreclosure Case on November 28, 2023.

112.    Selene did not correct the errors concerning the force-placed insurance policy until on or about August 21, 2024. *See* Exhibit 8.

113.    Selene assessed improper fees and charges to the Loan as a result of improperly paying for the force-placed insurance policy and refusing to acknowledge proof of the Progressive Policy, resulting in errors with the Loan and the filing of the Foreclosure Case.

114.    Selene's actions in failing to timely terminate the force-placed insurance policy constitutes a violation of 12 U.S.C. §§ 2605(k)(1)(E) and 2605(l)(3)(A) and 12 C.F.R. § 1024.37(g)(1).

115.    Selene's actions in remove all force-placed insurance charges and related fees from the Loan constitute multiple violations of 12 U.S.C. §§ 2605(k)(1)(E), 2605(l)(3)(B), 2605(m) and 12 C.F.R. § 1024.37(g)(2).

116.    Selene's actions are part of a pattern and practice of behavior in conscious disregard for Wiley's rights and in abdication of Selene's obligations under RESPA and Regulation X.

117.    As a result of Selene's actions, Selene is liable to Wiley for actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

118.    Additionally, Wiley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO: VIOLATIONS OF RESPA AND REGULATION X
### (12 C.F.R. § 1024.41(b)(1) and 12 U.S.C. § 2605(k))

**(Failure to Exercise Reasonable Diligence to Complete a Loss Mitigation Application)**

119.    Wiley restates and incorporates all of the allegations contained in paragraphs 1 through 98 in their entirety, as if fully rewritten herein.

120.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

121.    12 C.F.R. § 1024.41(b)(1) provides that a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

122.    12 C.F.R. § 1024.41(b)(2)(i) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale, the servicer must promptly

review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

123.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

124.    If a loss mitigation application is incomplete, the servicer must notify the borrower in writing of the additional information or documents needed to complete the application and provide a reasonable date by which the borrower should submit such documents and information. 12 C.F.R. § 1024.41(b)(2)(i)(B).

125.    On November 3, 2023, Wiley submitted Application #1 to Selene. *See* Exhibit 9.

126.    When Wiley submitted Application #1, there was no foreclosure sale scheduled because the Foreclosure Case had not been filed.

127.    Application #1 was not a "duplicative request" because Selene had not previously evaluated or otherwise complied with 12 C.F.R. § 1024.41's requirements for a prior complete loss mitigation. *See* 12 C.F.R. § 1024.41(i).

128.    On November 10, 2023, Selene sent Incomplete Notice #1 to Wiley requesting "Borrower – Business Bank Statements Jan 1 to oct 13 bank stmt matching P and L stmt." *See* Exhibit 10.

129.    On November 30, 2023, Wiley submitted bank statements for July 11 to October 31, 2023 and a letter of explanation informing Selene that she opened her business bank account on July 10, 2023. *See* Exhibit 11.

130.    On December 19, 2023, Selene improperly closed out review of Application #1, falsely stating that the "Borrower failed to return the completed financial workout package and supporting documentation." *See* Exhibit 12.

131.    On January 22, 2024, Wiley submitted Application #2 to Selene. *See* Exhibit 16.

132.    When Wiley submitted Application #2, there was no foreclosure sale scheduled.

133.    Application #2 was not a "duplicative request" because Selene had not previously evaluated or otherwise complied with 12 C.F.R. § 1024.41's requirements for a prior complete loss mitigation. *See* 12 C.F.R. § 1024.41(i).

134.    On January 26, 2024, Selene sent Incomplete Notice #2 to Wiley requesting "Borrower – Business Bank Statements Received however need from Jan 1st to Jul 10th." *See* Exhibit 17.

135.    On February 2, 2024, Wiley again submitted the explanation letter informing Selene that she opened her business bank account on July 10, 2023. *See* Exhibit 18.

136.    On March 6, 2024, Selene improperly closed out review of Application #2, falsely stating that the "Borrower failed to return the completed financial workout package and supporting documentation." *See* Exhibit 19.

137.    Through Selene Response #1 dated March 22, 2024, Selene informed Wiley that it required additional documents to complete Application #1 and Application #2:

> Please note, although Ms. Wiley provided a letter explaining that she did not establish a Business Bank Account until July 10, 2023, self-employment income reflecting on a Profit and Loss Statement must be validated by Bank Statements.

> Since Ms. Wiley did not have a Business Bank Account from January 1, 2023 to July 9, 2023, she would have needed to provide her Bank Statements from her personal bank account along with her letter of explanation.

*See* <u>Exhibit 21</u>.

138.    This was the first time Selene communicated that there was an issue with Wiley's explanation letter and the first time Selene requested Wiley's personal bank statements.

139.    Selene's conduct in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete Wiley's loss mitigation applications constitute violations of 12 C.F.R. § 1024.41(b)(1) and 12 U.S.C. § 2605(k)(1)(E), and, as a result, Wiley has suffered actual damages as detailed, *supra*.

140.    Selene's actions are part of a pattern and practice of behavior in conscious disregard for Wiley's rights and in abdication of Selene's obligations under RESPA and Regulation X.

141.    As a result of Selene's actions, Selene is liable to Wiley for actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

142.    Additionally, Wiley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE: VIOLATIONS OF RESPA AND REGULATION X
### (12 C.F.R. § 1024.41(f)(2) and 12 U.S.C. § 2605(k))

### (Prohibited Dual Tracking)

143.    Wiley restates and incorporates all of the allegations contained in paragraphs 1 through 98 in their entirety, as if fully rewritten herein.

144.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

145.    12 C.F.R. § 1024.41(f) prohibits "dual-tracking" of loans, or moving forward with foreclosures of loans if borrowers are dutifully performing on loss mitigation options.

146.    A servicer is prohibited from making the first notice or filing required by applicable law for any judicial foreclosure unless:

> (i)    A borrower's mortgage loan obligation is more than 120 days delinquent;
>
> (ii)   The foreclosure is based on a borrower's violation of a due-on-sale clause; or
>
> (iii)  The servicer is joining the foreclosure action of a superior or subordinate lienholder.

12 C.F.R. § 1024.41(f)(1).

147.    If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial … process, a servicer shall not make the first notice or filing required by applicable law for any judicial … foreclosure process unless:

> (i)    The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (ii)   The borrower rejects all loss mitigation options offered by the servicer; or
>
> (iii)  The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(f)(2).

148. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

149. 12 C.F.R. § 1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

150. 12 C.F.R. § 1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to §102[4].41(b)(2)(i)(B), *or no additional information is requested in such notice*, the application shall be considered facially complete."

151. 12 C.F.R. § 1024.41(c)(1) provides:

> [I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:
>
> [….]
>
> (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

152.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(c)(2)(iv) provides that 12 C.F.R. § 1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

153.    Wiley submitted Application #1 to Selene on November 3, 2023. *See* Exhibit 9.

154.    When Wiley submitted Application #1, there was no foreclosure sale scheduled because the Foreclosure Case had not been filed.

155.    Application #1 was not a "duplicative request" because Selene had not previously evaluated or otherwise complied with 12 C.F.R. § 1024.41's requirements for a prior complete loss mitigation. *See* 12 C.F.R. § 1024.41(i).

156.    On or about November 10, 2023, Selene sent Incomplete Notice #1 to Wiley requesting additional documents to complete Application #1 by December 9, 2023. *See* Exhibit 10.

157.    Selene allowed the owner of the Loan to file the Foreclosure Case on November 28, 2023, or before the expiration of the deadline to submit documents in response to Incomplete Notice #1.

158.    Before initiating the Foreclosure Case, Selene did not send Wiley a notice pursuant to 12 C.F.R. § 1024.41(c)(1)(ii).

159.    As of November 28, 2023, Wiley had not rejected any loss mitigation option or failed to perform under any agreement on a loss mitigation option.

160.    The Foreclosure Case was not based on any violation of a due-on-sale clause nor did the owner of the Loan join a foreclosure action of a superior or subordinate lienholder.

161.    Selene's actions in making the first notice or filing required by applicable law for a judicial foreclosure during the pre-foreclosure review period without providing Wiley with a reasonable time to complete Application #1 constitutes a violation of 12 C.F.R. § 1024.41(f) and 12 U.S.C. § 2605(k)(1)(E) and, as a result, Wiley has suffered actual damages as detailed, *supra*.

162.    Selene's actions are part of a pattern and practice of behavior in conscious disregard for Wiley's rights and in abdication of Selene's obligations under RESPA and Regulation X.

163.    As a result of Selene's actions, Selene is liable to Wiley for actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

164.    Additionally, Wiley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT FOUR: VIOLATIONS OF RESPA AND REGULATION X
#### (12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k))

**(Failure to Timely and Properly Respond to Notices of Error)**

165.    Wiley restates and incorporates all of the allegations contained in paragraphs 1 through 98 in their entirety, as if fully rewritten herein.

166.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

167.    A servicer must respond to a notice of error by either:

> (A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and

*Givonna L. Wiley v. Selene Finance, LP*
Complaint for Damages: Page 25

> contact information, including a telephone number, for further assistance; or
>
> (B)  Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

168.  A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

> (A)  Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.
>
> (B)  Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.
>
> (C)  For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

169.  NOE #1, NOE #2, NOE #3, and NOE #4 each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a written notice from Wiley that includes her name, mortgage loan account number, and property address and asserts errors that she believed to have occurred. *See* Exhibit 15, Exhibit 20, Exhibit 22, and Exhibit 23.

*Givonna L. Wiley v. Selene Finance, LP*
Complaint for Damages: Page 26

## NOE #1

170.     On or about January 4, 2024, Wiley, through counsel, sent NOE #1 to Selene at the Designated Address. *See* Exhibit 15.

171.     Through NOE #1, Wiley asserted that Selene committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for issuing inaccurate information related to Selene's review of Application #1, specifically the false statement that "Borrower failed to return the completed financial workout package and supporting documentation." *See* Exhibit 15.

172.     Selene received NOE #1 at the Designated Address on January 18, 2024. *See* Exhibit 15.

173.     Selene failed to respond to NOE #1 within thirty business days of January 18, 2024, or by March 1, 2024, in violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k)(1)(C) and (E). *See* 12 C.F.R. § 1024.35(e)(3)(i)(C).

174.     Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Selene did not correct any errors as identified in NOE #1.

175.     Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as Selene's refusal to respond to the errors asserted by NOE #1 indicates that it failed to perform a reasonable investigation into the errors alleged through NOE #1.

## NOE #2

176.     On or about March 7, 2024, Wiley, through counsel, sent NOE #2 to Selene at the Designated Address. *See* Exhibit 20.

177.     Through NOE #2, Wiley asserted that Selene committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for issuing inaccurate information related to Selene's

review of Application #2, specifically the false statement that "Borrower failed to return the completed financial workout package and supporting documentation." *See* Exhibit 20.

178.    Selene received NOE #2 at the Designated Address on March 19, 2024. *See* Exhibit 20.

179.    On or about March 22, 2024, Selene sent Selene Response #1 to Wiley. *See* Exhibit 21.

180.    In Selene Response #1, Selene, for the first time, informed Wiley that it required Wiley's personal bank statements to complete Application #1 and Application #2. *See* Exhibit 21.

181.    Despite Selene's implicit acknowledgment that it did not exercise reasonable diligence to complete Application #2, by failing to request "Bank Statements from her personal bank account along with her letter of explanation," Selene improperly concluded that no error had occurred. *See* Exhibit 21.

182.    Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Selene did not correct any errors as identified in NOE #2.

183.    Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as had Selene performed a reasonable investigation into the errors asserted by NOE #2, Selene would have recognized it committed an error by failing to request "Bank Statements from her personal bank account along with her letter of explanation" before improperly closing its review of Application #2.

## NOE #3

184.    On or about March 20, 2024, Wiley, through counsel, sent NOE #3 to Selene at the Designated Address. *See* Exhibit 22.

185.    Through NOE #3, Wiley asserted that Selene committed a covered error pursuant to 12 C.F.R. §§ 1024.35(b)(5) and (11) for improperly assessing fees to the Loan for force-placed insurance after confirming that Wiley purchased homeowner's insurance. *See* Exhibit 22.

186.    Selene received NOE #3/RFI #3 at the Designated Address on March 26, 2024. *See* Exhibit 22.

187.    On or about May 29, 2024, Selene sent Selene Response #2 to Wiley. *See* Exhibit 24.

188.    Selene Response #2 acknowledges that Selene claimed to have canceled the force-placed insurance but falsely claims that "the monthly insurance premium was adjusted down from $318.10 to $239.42." *See* Exhibit 24.

189.    Selene did not correct the errors raised in NOE #3 until it performed an escrow analysis on or about August 21, 2024. *See* Exhibit 8 and Exhibit 24.

190.    Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Selene did not timely correct the errors identified in NOE #3 until August 21, 2024, well past the regulatory response deadline.

191.    Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as Selene failed to include a statement concerning its determination as to the errors asserted by NOE #3, and, had Selene performed a reasonable investigation into the errors asserted by NOE #3, Selene would have timely corrected the errors identified in NOE #3.

## NOE #4

192.    On or about March 20, 2024, Wiley, through counsel, sent NOE #4 to Selene at the Designated Address. *See* Exhibit 23.

193.    Through NOE #4, Wiley asserted that Selene committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to exercise reasonable diligence in obtaining documents to complete her loss mitigation applications. *See* Exhibit 23.

194.    Selene received NOE #4 at the Designated Address on March 30, 2024. *See* Exhibit 23.

195.    On or about May 29, 2024, Selene sent Selene Response #2 to Wiley. *See* Exhibit 24.

196.    Selene Response #2 does not respond to the errors raised in NOE #4. *See* Exhibit 24.

197.    Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Selene did not correct any errors as identified in NOE #4.

198.    Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as Selene's refusal to respond to the errors asserted by NOE #4 indicates that it failed to perform a reasonable investigation into the errors alleged through NOE #4.

### Damages and Request for Reasonable Attorneys' Fees and Costs

199.    Selene's conduct constitutes violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) and have caused Wiley to suffer actual damages, as discussed, *supra*.

200.    Selene's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) caused Wiley's attorneys' fees and costs associated with the preparation of the notices of error to metamorphose into damages. *See Marais v. Chase Home Fin., LLC (Marais II)*, 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); s*ee Marais v. Chase Home Fin. LLC (Marais I)*, 736 F.3d 711, 721 (6th Cir. 2013).

201.    Selene's actions are part of a pattern and practice of behavior in conscious disregard for Wiley's rights and in abdication of Selene's obligations under RESPA and Regulation X.

202.    As a result of Selene's actions, Selene is liable to Wiley for actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

203.    Additionally, Wiley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT FIVE: VIOLATIONS OF RESPA AND REGULATION X
### (12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k))

**(Failure to Timely and Properly Respond to a Request for Information)**

204.    Wiley restates and incorporates all of the allegations contained in paragraphs 1 through 98 in their entirety, as if fully rewritten herein.

205.    "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

206.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

207.    A servicer must respond to a request for information by:

> (i)    Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

208. Furthermore, a servicer must properly respond to a request for information within the following deadlines:

> A servicer must comply with the requirements of paragraph (d)(1) of this section:
>
> (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
>
> (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

209. RFI #3 constitutes a request for information as defined by 12 C.F.R. § 1024.36(a) as it is a written request from Wiley that included her name, mortgage loan account number, and property address and requested information related to the Loan. *See* Exhibit 22.

210. On or about March 20, 2024, Wiley, through counsel, sent RFI #3 to Selene at the Designated Address. *See* Exhibit 22.

211. Through RFI #3, Wiley sought information concerning the Loan, specifically copies of any force-placed insurance policies relating to the Loan. *See* Exhibit 22.

212.    Selene received RFI #3 at the Designated Address on March 26, 2024. *See* Exhibit 22.

213.    On or about May 29, 2024, Selene sent Selene Response #2 to Wiley. *See* Exhibit 24.

214.    Selene Response #2 failed to provide any of the information requested by RFI #3. *See* Exhibit 24.

215.    Selene did not fulfill its obligations as to 12 C.F.R. § 1024.36(d)(1)(i) as Selene did not timely provide Wiley with the requested information identified in RFI #3.

216.    Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(d)(1)(ii), as Selene failed to provide Wiley with a written notification that it had determined that the information and documents requested through RFI #3 was not available to Selene.

217.    Selene's failure to comply with 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) caused Wiley's attorneys' fees and costs associated with the preparation of RFI #3 to metamorphose into damages. *See Marais v. Chase Home Fin., LLC (Marais II)*, 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); s*ee Marais v. Chase Home Fin. LLC (Marais I)*, 736 F.3d 711, 721 (6th Cir. 2013).

218.    Selene's actions are part of a pattern and practice of behavior in conscious disregard for Wiley's rights and in abdication of Selene's obligations under RESPA and Regulation X.

219.    As a result of Selene's actions, Selene is liable to Wiley for actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

220.    Additionally, Wiley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT SIX: VIOLATIONS OF THE RMLA**
**(R.C. 1322.40(B) and (C))**

**(False or Misleading Statements; Improper, Fraudulent, or Dishonest Dealings)**

221.    Wiley restates and incorporates all of the allegations contained in paragraphs 1 through 98 in their entirety, as if fully rewritten herein.

222.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot make false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations. R.C. 1322.40(B).

223.    Selene violated R.C. 1322.40(B) by making false or misleading statements of a material fact, including but not limited to:

a.  Falsely representing that Selene would confirm the status of the Progressive Policy within five (5) business days of July 18, 2023;

b.  Falsely representing that there was "no additional action required from you at this time" on August 4, 2023;

c.  Falsely representing that Selene had not received proof of insurance on August 31, 2023;

d.  Misrepresenting that Wiley failed to "return the completed financial workout package and supporting documentation" on December 19, 2023; and,

e.  Misrepresenting that Wiley failed to "return the completed financial workout package and supporting documentation" on March 6, 2024.

224. Selene violated R.C. 1322.40(B) by making false promises regarding a material fact, including promising to confirm the status of the Progressive Policy within five (5) business days of July 18, 2023.

225. Selene violated R.C. 1322.40(B) by engaging in a continued course of misrepresentations regarding the status of Wiley's insurance verification and the review of her loss mitigation applications.

226. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

227. Selene violated R.C. 1322.40(C) by engaging in improper, fraudulent, or dishonest dealings, including but not limited to:

    a. Failing to timely and properly confirm the status of the Progressive Policy;

    b. Issuing the September 1, 2023 Annual Escrow Account Disclosure Statement without adjusting Wiley's monthly escrow obligation after receiving proof of the Progressive Policy;

    c. Waiting until August 21, 2024 to decrease Wiley's monthly escrow obligation to what it should have been following Wiley's purchase of the Progressive Policy;

    d. Assessing improper fees and charges to the Loan;

    e. Allowing the owner to file the Foreclosure Case when Selene's failure to timely and properly confirm the status of the Progressive Policy directly and proximately resulted in Wiley being unable to afford the excessive monthly payment demanded by Selene;

f.  Engaging in prohibited dual tracking by allowing the owner to file the Foreclosure Case after Wiley submitted Application #1 and while the time to submit documents to complete Application #1 had not expired;

g.  Failing to properly request documents to complete Application #1;

h.  Failing to properly request documents to complete Application #2; and,

i.  Failing to properly investigate and respond to Wiley's requests for information and notices of error.

228.  As a result of Selene's conduct, Wiley has suffered actual damages as described herein. Wiley is entitled to recover actual damages, reasonable attorneys' fees and costs, and punitive damages. R.C. 1322.52.

## COUNT SEVEN: VIOLATIONS OF THE RMLA
### (R.C. 1322.45(A))

**(Failure to Act with Reasonable Skill, Care, and Diligence; Good Faith and Fair Dealing)**

229.  Wiley restates and incorporates all of the allegations contained in paragraphs 1 through 98 in their entirety, as if fully rewritten herein.

230.  A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and: "(2) Follow reasonable and lawful instructions from the buyer; (3) Act with reasonable skill, care, and diligence; [and] (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan." R.C. 1322.45(A).

231.  A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

232. Selene violated R.C. 1322.45(A)(2) by failing to follow Wiley's reasonable requests to confirm the Progressive Policy AND investigate and correct the insurance, escrow, and loss mitigation errors.

233. Selene violated R.C. 1322.45(A)(3) by failing to act with reasonable skill, care, and diligence in its servicing of the Loan and R.C. 1322.45(A)(4) by failing to act in good faith and with fair dealing, including, but not limited to:

    a. Failing to timely and properly confirm the status of the Progressive Policy;

    b. Issuing the September 1, 2023 Annual Escrow Account Disclosure Statement without adjusting Wiley's monthly escrow obligation after receiving proof of the Progressive Policy;

    c. Waiting until August 21, 2024 to decrease Wiley's monthly escrow obligation to what it should have been following Wiley's purchase of the Progressive Policy;

    d. Assessing improper fees and charges to the Loan;

    e. Allowing the owner to file the Foreclosure Case when Selene's failure to timely and properly confirm the status of the Progressive Policy directly and proximately resulted in Wiley being unable to afford the excessive monthly payment demanded by Selene;

    f. Engaging in prohibited dual tracking by allowing the owner to file the Foreclosure Case after Wiley submitted Application #1 and while the time to submit documents to complete Application #1 had not expired;

    g. Failing to properly request documents to complete Application #1;

    h. Failing to properly request documents to complete Application #2; and,

      i.   Failing to properly investigate and respond to Wiley's requests for information and notices of error.

234.    Selene's violations of RESPA and Regulation X also constitute violations of R.C. 1322.45(A).

235.    As a result of Selene's conduct, Wiley has suffered actual damages as described herein. Wiley is entitled to recover actual damages, reasonable attorneys' fees and costs, and punitive damages. R.C. 1322.52; R.C. 1322.45(D).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Givonna L. Wiley respectfully requests that this Court enter an Order granting Judgment against Defendant Selene Finance LP as follows:

A.    Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Seven;

B.    Statutory damages of Two Thousand Dollars ($2,000.00) per violation of RESPA as contained in Counts One through Five;

C.    Costs and reasonable attorneys' fees as to Counts One through Seven;

D.    Punitive damages to the extent allowed by law for the allegations contained in Counts Six and Seven; and,

E.    Such other relief which this Court may deem appropriate.

## JURY DEMAND

Plaintiff Givonna L. Wiley respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Givonna L. Wiley*